UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No.: 10-24486 CV-SCOLA

UNITED STATES OF AMERICA,
        *ex. rel* Marc Osheroff

                Plaintiff-Relator
v.

HUMANA, INC.; et al,

                Defendants
_____

## MOTION TO ENFORCE SETTLEMENT

This motion seeks to enforce a mediated settlement reached by Relator and MCCI after a full day of negotiations with the assistance of a former Department of Justice trial attorney. The parties reduced their settlement to writing and announced it to the Court. The Government consented to the essential terms. MCCI now attempts to renege on the settlement as a bad deal in view of the Court's ruling on motions to dismiss filed by the other defendants. MCCI relies upon the failure of the parties to reach agreement on non-essential terms of a formal settlement agreement as an excuse for withdrawing. But since it is unnecessary to enforcement of a settlement that the parties reach agreement on a formal settlement agreement, even when they have contemplated one, and because the disagreement in this case concerns non-essential details affecting implementation of the settlement, rather than the existence *vel non* of the settlement, the Court should enforce the settlement as written by the parties, announced to the Court and approved by the Department of Justice.

### FACTS AND PROCEDURAL HISTORY

On May 24, 2012 the parties participated in a court-mandated mediation with former Department of Justice Attorney Stephen D. Altman. The mediation resulted in a full settlement between Relator and Defendant MCCI Group Holdings, LLC ("MCCI"). *See* Report of Mediator, ECF 103. The terms of settlement were reduced to writing in a handwritten document that stated:

> MEMO OF UNDERSTANDING
> The below parties have agreed to resolve their claims in this action against each other on the following terms:
> 1.  MCCI will pay the United States $1.6 million within 14 days of court approval of the dismissal.
> 2.  MCCI will pay relator's counsel $300,000 in attorney fees and costs within 14 days of dismissal.
> 3.  The parties will execute a settlement agreement that will include mutual releases, and a statement that there is no admission of liability and that the settlement is for economic reasons.
> 4.  Relator reserves all rights against all other defendants.
> 5.  MCCI will not object to any relator share amount up to 30%.

Ex. A. The agreement was signed by MCCI's counsel, Relator's Counsel, Relator Marc Osheroff, and Eduardo Alarcon, M.D., for Defendant MCCI.[1] *Id.*

On June 8, 2012, Defendant informed Relator that MCCI consented to Relator filing a notice of settlement with the Court. Ex. B. This notice of settlement stated: "Relator Marc Osheroff ('Relator') and Defendant MCCI Group Holdings, Inc. ('MCCI') hereby provide notice to the Court pursuant to the Court's Order of April 16, 2012, [ECF 64], that a full settlement has been reached between the Relator and MCCI pursuant to which MCCI will pay $1.6 million to the United States and attorney's fees of $300,000 to Relator's counsel in full settlement of all claims asserted against MCCI in this matter." Notice of Settlement, ECF 108. On June 8, 2012

---

[1]     Eduardo Alarcon attended the mediation for MCCI and is listed as one of the founders of MCCI on MCCI's website.

Defendant also filed a Notice of Settlement and Suggestion of Mootness stating that Defendant's Motion to Dismiss was moot, except as it applied to other Defendants. Notice of Settlement and Suggestion of Mootness, ECF 107.

On August 13, 2012, the Department of Justice approved the settlement amount of $1.6 million and agreed to a relator's share of 25%, requesting that the Relator forward a draft settlement agreement for review. Ex. C. At the Relator's request, the Department of Justice sent Relator a sample Settlement Agreement from an unrelated case containing the standard clauses normally required by the government. Ex. D-1, D-2. Shortly thereafter, on August 23, 2012, Relator sent Defendant MCCI a draft of a formal Settlement Agreement, using the Government's sample, along with a draft Stipulation of Dismissal. Ex. E-1, E-2, F-1-F-3. Relator also sent Defendant a copy of the government's sample Settlement Agreement. Ex G. On September 13, 2012, Defendant returned a redlined version of the formal Settlement Agreement which deleted several standard clauses of the DOJ Settlement Agreement form, such as provisions that the Department of Justice was not releasing Defendant from any administrative sanctions, tax liabilities, or criminal charges, and that MCCI could not bill any settlement costs to the government. Ex. H-1, H-2. Notably, in a redlined version of the settlement release, Defendant did not strike the language in paragraph 8 which said:

> Contemporaneously with execution of this Agreement, the Relator and MCCI shall execute the attached Stipulation Dismissing all of Relator's Claims against MCCI with prejudice as to the Relator and ***without prejudice to the United States***.

*Id*. (emphasis added). MCCI also never returned any edits to the Stipulation of Dismissal, which provided that dismissal would be without prejudice to the United States. *See* Ex. F-3. There has never been any suggestion that the Government would grant MCCI any release

3

whatsoever and MCCI neither bargained for nor obtained a release from the Government at the mediation.

Defendant did not attend the hearing on the other defendants' Motions to Dismiss. *See* ECF 126. On Friday September 28, 2012, while Relator was still attempting to determine whether the government would be satisfied with deletion of clauses it has required in some other FCA settlements and/or whether MCCI could be persuaded to accept the government's language in the formal Settlement Agreement, the Court entered an order granting the other defendants' motions to dismiss with prejudice. Order on Motions to Dismiss, ECF 129.[2] The following Monday morning, October 1, MCCI sent Relator a letter saying "It is evident that we cannot agree on the proper language for a final settlement stipulation and all prior offers are withdrawn." Ex I. On October 4, 2012, Relator sent MCCI's counsel a demand letter informing MCCI that its offer was accepted at the May 24, 2012, mediation and that it was not at liberty to withdraw from the settlement. Ex. J-1-J-4. Attached to this letter Relator also provided MCCI a Settlement Agreement executed by the Relator and his counsel and a Stipulation for Dismissal. *Id.* Nevertheless, Defendant MCCI has failed or refused to execute the Settlement Agreement, necessitating this Motion.

---

[2]  The Court stated in its Order on the Motions to Dismiss, "MCCI's Motion to Dismiss [ECF No. 67] is **DENIED**, in light of the settlement. If the settlement fails, MCCI may move to renew its motion." ECF 129 at 17.  The Court, therefore, did not rule on the merits of MCCI's Motion to Dismiss.  The Order parenthetically noted a Miami Herald article mentioned Humana, CAC, and MCCI. ECF 129 at p. 8 referencing ECF 73:5. However, nowhere in that article nor in any of MCCI's purported public disclosures was there any disclosure of *daily* lunches alleged by Relator. ECF 27, ¶¶ 243-247. The co-defendants' public disclosures do not immunize MCCI from FCA liability for unlawful kickbacks.

ARGUMENT

**The Court has Jurisdiction to Hear this Motion.**

Under federal law, a district court has inherent power to summarily enforce settlement agreements entered into by parties litigant in a pending case. *Supreme Fuels Trading v. Sargeant*, 689 F.3d 1244, 1246 (11th Cir. 2012); *Ford v. Citizens and Southern National Bank,* 928 F.2d 1118, 1121 (11th Cir. 1991). The motion to enforce a settlement agreement is essentially an action to specifically enforce the contract. *Id*. at 1122. The Court's jurisdiction to enforce a settlement arises from its jurisdiction to hear the claim that otherwise provides the basis for its jurisdiction. *Reed v. United States*, 891 F.2d 878, 880 (11th Cir. 1990).

In the instant case, the Court's jurisdiction arises under the False Claims Act and the case remains "pending" because a separate judgment has not been entered on the Court's order granting the motions to dismiss filed by the Humana, CAC and Pasteur Defendants. ECF 129; Fed. Rule Civ. P. 58; *Kent v. Baker*, 815 F.2d 1395, 1397 (11th Cir. 1987). Furthermore, the Court's order specifically retained jurisdiction to address any problem with the MCCI settlement or reconsider MCCI's motion to dismiss should the settlement fail. *See* ECF 129, footnote 1 and Conclusion paragraphs 4 and 5; *See also, Le Bon Pain, Inc. v. Guyon and Co., Inc.*, 720 F. Supp. 983 (S.D. Fla. 1989) (noting that the weight of Eleventh Circuit authority and common sense indicate that a district court retains jurisdiction to enforce a settlement, even when the case has been dismissed on the strength of an announced settlement that later fails, as a party could otherwise unilaterally deprive the court of jurisdiction by feigning agreement to a settlement.)

**Florida Contract Law Governs the Construction & Enforcement of the Settlement.**

Principles of contract law of the forum state apply to the interpretation and enforcement of settlement agreements. *In re Chira*, 567 F.3d 1307, 1311 (11th Cir. 2009); *Resnick v. Uccello Immobilien GMBH, Inc.,* 227 F.3d 1347, 1350 (11th Cir.2000). The "'interpretation of private

5

contracts is ordinarily a question of state law.'" *Chem. Bank v. First Trust of N.Y.* (*In re Se. Banking Corp.*), 156 F.3d 1114, 1121 (11th Cir.1998) (quoting *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 115 S.Ct. 1212, 1217 n. 4 (1995)). Even in cases arising under the Court's federal question jurisdiction, the Eleventh Circuit disfavors federal common law and applies it in only rare instances concerning the rights and obligations of the United States, interstate and international disputes implicating the conflicting rights of states or relations with foreign nations, and admiralty cases. *See Resnick,* 227 F.3d at 1350 n. 4 ("Because this settlement agreement is between two private parties, federal common law does not apply."); *Hayes v. Nat'l Serv. Indus.,* 196 F.3d 1252, 1253 (11th Cir.1999) (applying state law to construction and enforceability of settlement agreement arising under Title VII). Even when the federal common law of contracts is clearly applicable, as in matters dealing with federal government contracts, a federal court may select a contract rule of the forum state as the applicable federal rule of decision. *Begner v. United States*, 428 F.3d 998, 1005 (11th Cir. 2005). Therefore, the Court in the instant case should apply Florida contract law to the construction and enforcement of the settlement agreement.

### There was a Meeting of the Minds on an Enforceable Settlement.

Under Florida contract law, a settlement agreement is enforceable if its terms are sufficiently specific and mutually agreed upon as to every essential element. *Carpaneda v. Quayside Place Partners*, 2010 WL 2681383 at *1 (S.D. Fla. April 12, 2010); *Sands v. Wagner & Hunt, P.A.,* 2009 WL 2730469 at *2 (S.D. Fla. Aug.28, 2009) (citing *Spiegel v. H. Allen Holmes, Inc.,* 834 So.2d 295, 297 (Fla. 4th DCA 2003)). However, the agreement to make a contract does not depend on "'the agreement of two minds in one intention, but on the agreement of two sets of external signs—not on the parties having meant the same thing but on their having

said the same thing.'" *Carpaneda, Id.*; *Robbie v. City of Miami,* 469 So.2d 1384, 1385 (Fla.1985) (quoting *Blackhawk Heating and Plumbing Co. v. Data Lease Financial Corp.,* 302 So.2d 404, 407 (Fla.1974) (quoting *Genzier v. Bielecki,* 97 So.2d 604, 608 (Fla.1957)). In this regard, Florida applies an "objective test" to determine whether a contract, or a settlement, may be duly enforced. *Sands*, 2009 WL 2730469, at *2.

In the instant case, the parties "said the same thing."    *Carpaneda, supra*. As in *Carpaneda*, the parties entered into a handwritten agreement, here called a "Memo of Understanding," at the conclusion of mediation, stating that they had "agreed to resolve claims in this action against each other . . . ." Ex. A. Both parties filed notices with this Court stating that they had settled. Notice of Settlement and Suggestion of Mootness, ECF 107; Notice of Settlement, ECF 108. Therefore, there can be no question that the parties said the same thing and intended to be bound. A settlement is as conclusive of the rights between the parties as a judgment. *Reed*, supra at pp. 880-881. The parties to a civil action have the right to settle the controversy between them by agreement at any time and an agreement settling all issues in the case is binding not only upon the parties but also upon the court. *Id.* at 881.

### The Failure to Sign a Formal Settlement Agreement is of No Consequence.

Because Relator accepted Defendant's settlement offer, and the parties intended to create a binding contract, it is irrelevant that the parties also agreed to later memorialize this agreement through a formal settlement agreement containing mutual releases. In *Miles v. Northwestern Mut. Life Ins. Co.*, 677 F.Supp.2d 1312 (M.D. Fla. 2009) the court held that: "[T]he fact that the e-mail mentions the drafting of a release does not negate the binding nature of the agreement as a release 'would have merely memorialized the essential terms to which the parties had previously agreed.'" *Miles*, 677 F.Supp.2d at 1316; *See also Boyko v. Ilardi,* 613 So.2d 103, 104 (Fla. 3d

DCA 1996) ("Execution of the settlement agreement is not a condition precedent to a settlement agreement, but rather is merely a procedural formality.").

If a party to a suit who has previously authorized a settlement changes his mind when presented with settlement documents containing language he does not like, that party remains bound by the terms of the agreement. *Fulgence v. J. Ray McDermott & Co.,* 662 F.2d 1207, 1209 (5th Cir. 1981) (applying federal common law). Likewise, if there has been an oral agreement to settle a claim for a stated amount by signing a general release, a plaintiff cannot withdraw from the settlement on the ground that he requires "specific language" in the release that is not agreed upon by a defendant. *Wong v. Bailey*, 752 F.2d 619, 623 (11th Cir. 1985) (applying Georgia law).

### Disagreement About Non-Essential Details Does Not Preclude Enforcement of the Settlement.

Uncertainty about non-essential terms or small items will not preclude enforcement of a settlement agreement. *See Valcin v. Primerica Life Ins. Co.,* 2011 WL 5037212 (M.D. Fla. Oct. 24, 2011) and *Sands v. Wagner & Hunt*, 2009 WL 2730469, *both citing Spiegel v. H. Allen Homes, Inc.,* 834 So.2d 295, 297 (Fla. 4th DCA 2003); *See also State Farm Mut. Auto. Ins. Co. v. InterAmerican Car Rental, Inc.,* 781 So.2d 500, 502 (Fla. 3d DCA 2001) ("A settlement agreement does not have to be in writing, and does not have to definitely fix all details of the parties' understanding in order to be enforceable."); and *In re Rolsafe Intern., LLC*, 2012 WL 3963175 at (Bkrtcy.M.D.Fla. August 22, 2012) ("However, uncertainty as to non-essential terms or small items will not preclude the enforcement of a settlement agreement.").    Disputed terms that speak to how a settlement will be implemented rather than the existence of the settlement *vel non* are generally non-essential terms. *See Miles*, 677 F.Supp.2d at 1316.

The parties' "Memo of Understanding" provided for a payment of $1.6 million to the United States within 14 days of court approval of dismissal, $300,000 in attorney's fees to be paid to Relator's counsel within 14 days of dismissal, mutual releases, a reservation of rights by the Relator against all other defendants and no objection by MCCI to a relator's share of up to 30%. These are all the essential terms required for settlement of the dispute between MCCI and the Relator. It is immaterial that the parties' agreement was briefly stated, given that all the material terms were included. *See Stempel v. Stempel,* 633 So.2d 26, 26–27 (Fla. 4th DCA 1994) (finding that a mediation agreement was enforceable even though it was a mere bare-bones agreement and one party urged that other terms should have been included).

In *Reed v United States, 891 F.2d 878*, the Government attempted to withdraw from the terms of a settlement of the tort claims of a minor on the grounds that, *inter alia*, all the details of a settlement trust for the minor had not been worked out before the minor's death. The court rejected this argument, holding that the details of the trust in question were not "essential terms whose omission defeats the entire agreement" and that the "material elements of the trust were final when the settlement agreement became binding."

The jurisprudence is replete with examples of disputes over proposed language of draft settlement agreements or releases. Courts have consistently found these to be non-essential details over which agreement was not required for the enforcement of an oral or bare-bones settlement. *See, e.g., Wong v. Bailey*, 752 F.2d 619 (11th Cir. 1985) (reservation of underinsurance benefits from general release); *Carpeneda v. Quayside Place Partners, LLP*, 2010 WL 2681383 (S.D. Fla. April 12, 2010) (liquidated damages clause in covenant not to sue and confidentiality clause were ancillary, not essential terms); *Miles v. Nw. Mut. Life Ins. Co.*, 2009 WL 5213874 (M.D. Fla. Dec. 21, 2009) (confidentiality and non-disparagement clauses

were immaterial as they spoke to how the agreement would be implemented); *Sands v. Wagner & Hunt*, 2009 WL 2730469 (S.D. Fla. Aug. 28, 2009) (confidentiality provision was an ancillary matter); *United States ex rel. Reynolds v. General Electric Co.*, 2007 WL 3020464 (D. S.C. Oct. 11, 2007) (disputed terms concerning severance packages or expunging employment records of qui tam relators); *McDonnell v. Engine Distribs.*, 2007 WL 2814628 (D.N.J. Sept. 24, 2007) (disputed terms concerning scope of the release, ensuring payment, tax treatment, indemnification and the scope of confidentiality all spoke to the settlement's implementation and were not essential settlement terms); *Rhein Medical, Inc. v. Koehler*, 889 F. Supp. 1511 (M.D. Fla. 1995) (disputed term about naming a contingent beneficiary to receive payments due to plaintiff in the event of his death was not a material term of settlement).

In the instant case, as discussed in greater detail below, clauses of the draft Settlement Agreement dealing with preservation of the rights of the United States to collect taxes, take administrative actions, file criminal charges and dispute cost reimbursement claims were non-essential terms that speak to implementation of the settlement, not its existence *vel non*.

### Parties Are Not Permitted to Withdraw From Settlements Announced to the Court.

Courts almost always enforce settlement agreements that have been announced to the court even though such announcements frequently leave out many of the non-essential details that the parties intended to address in a formal settlement agreement. The reason for this is obvious:  counsel should know when the parties have reached agreement on the essential terms of a settlement. Subsequent disagreements about the details of formal settlement agreements presumptively involve non-essential details that do not give a party the right to withdraw.

For example, in *Kent v. Baker*, 815 F.2d 1395 (11th Cir. 1987), the parties to an age discrimination action announced in open court, on the third day of trial, that they had settled the

case, that the terms of the settlement agreement were secret and that they would subsequently request dismissal of the lawsuit. Settlement documents were subsequently drafted, but not signed, and the defendant attempted to withdraw over a dispute about a confidentiality clause. The Eleventh Circuit ordered the settlement enforced.

In *Clough Marketing Services v. Main Line Corporation*, 313 Fed. Appx. 208 (11th Cir. 2008), the parties announced on the record the terms of a mediated settlement agreement. One party subsequently attempted to withdraw from the oral agreement on the ground that it was an "agreement to agree" because it required drafting of releases and a written settlement agreement. Applying Georgia law, the Eleventh Circuit disagreed, noting that a written settlement agreement "may have been a condition of the performance but it was not an act necessary for the parties to reach an agreement to settle".

Likewise, in *Valcin v. Primerica Life Ins. Co.*, 2011 WL 5037212, the parties announced to the court that they had reached a settlement and that once all settlement paperwork was finalized the plaintiff would dismiss with prejudice. The plaintiff refused to sign the settlement documents because she said they did not "comport with her understanding of the matter." The court ordered an evidentiary hearing, assessed the plaintiff with all costs and attorney's fees regardless of the outcome, and strongly suggested that the settlement would be enforced. Also, in *Brady v. Perry*, 910 F. Supp. 1564 (N.D. Ala. 1996), a settlement of a Title VII matter was read into the record before an administrative law judge, including a proviso that the agreement would be typed up and signed by the parties within 10 days. When the plaintiff subsequently refused to sign, the oral settlement agreement was enforced.

Similarly, in *Rhein Medical, Inc. v. Koehler*, 889 F. Supp. 1511 (M.D. Fla. 1995), an oral settlement agreement was announced to the court through written motions and notices of

settlement. Thereafter, a disagreement arose over additional terms and the plaintiff's lawyer dragged his feet about agreeing upon the language of a draft settlement document prepared by opposing counsel. The plaintiff and plaintiff's counsel were sanctioned and the oral settlement agreement was enforced because the "essential terms" of the settlement were agreed to by the parties even though "final details" were to be addressed in the written settlement agreement.

See also Miles, 677 F.Supp.2d 1312, where the court held that "the parties' agreement to file a notice of settlement with this Court and cancel the trial prior to the completion of a formally executed document demonstrates an intent to be bound by the terms of the September 18, 2009 e-mail."

In the instant case, the parties would not have announced a settlement to the court if they had not reached agreement on all material terms of settlement as set forth in the "Memo of Understanding."  Counsel for MCCI would not have advised the Court that his motion to dismiss was moot, ECF 107, and he of course would have attended argument on the motions to dismiss if he thought there were material terms upon which the parties had not agreed. The matters remaining for resolution in the draft Settlement Agreement are non-essential details that do not affect the binding force of the mediated agreement to settle.

**Required Approval of the Court Does Not Affect the Enforceability of the Settlement.**

In their "Memo of Understanding" the parties stated that "court approval of the dismissal" would be required before payment of the $1.6 million to the United States. The fact that the court did not approve the settlement before MCCI's attempt to withdraw does not make the agreement any less binding. See Reed, 891 F.2d at 882 (settlement of tort claim of minor against the United States was not any less binding on the Government because Florida law required court approval of all settlements involving minors; the minor died before court approval

of the settlement and the Eleventh Circuit rejected the Government's argument that the action had abated because judgment was not entered before the minor's death).

**Approval by the United States, if Required, Does Not Affect the Enforceability of the Settlement.**

In their "Memo of Understanding," the parties provided for "mutual releases," but said nothing about a release from the United States, which was not a party to the mediation, or approval of their settlement by the Department of Justice. However, in a Notice of Settlement filed with the Court, the Relator stated that 31 U.S.C. 3730(b)(1) requires the consent of the Attorney General and the Court for dismissal of a qui tam action. Notice of Settlement, ECF 108. On August 15, 2012, Relator filed a notice that the Department of Justice had given preliminary approval to the terms of the settlement, subject to review and final approval of the terms of the final settlement agreement. ECF 123. MCCI has now balked at signing the form of Settlement Agreement desired by the United States.

Although Relator previously advised the Court that Justice Department approval is required, the law on this issue is not at all clear in the context of a declined case. There is a conflict in the circuits on the applicability of 31 U.S.C. 3730(b)(1) to dismissal of an action after the United States has declined to intervene and the Relator has assumed responsibility for the litigation. The Ninth Circuit and district courts in the Eleventh Circuits have held that the Government cannot block a settlement in a non-intervened qui tam action, but the Government does have the right to question the settlement for good cause. *See* James Helmer, FALSE CLAIMS ACT: WHISTLEBLOWER LITIGATION, §19-11 (5th Ed. 2007) (citing cases) [attached as Ex.K]. The Fifth and Sixth Circuits disagree, believing that a court may not dismiss a False Claims Act case, even if the Government has not elected to intervene in the case, without the Attorney General's consent. *Id.*

In *U.S. ex rel. Fender v. Tenet Healthcare Corp.,* 105 F. Supp. 2d 1228, 1231 (N.D. Ala. 2000)[3], a district court in the Eleventh Circuit stated the case against a requirement of Justice Department approval of settlements in declined cases:

> The court further holds that the United States cannot prevent the parties from settling the action . . . The decision by the Attorney General not to intervene in and conduct the lawsuit is tantamount to consent by the Attorney General to have the action dismissed. *Minotti v. Lensink,* 895 F.2d 100, 104 (2d Cir.1990); *United States ex rel. Laughlin v. Eicher,* 56 F.Supp. 972, 973 (D.D.C.1944)."

> Equally as important is the 9th Circuit's holding in *U.S. ex rel Killingsworth v. Northrop Corporation,* 25 F.3d 715 (9th Cir.1994)(citations omitted) , which held that the Government's right to intervention does not give it absolute right to bar proper settlement between parties where the Government has had notice of settlement and has declined to take any action. The Government cannot force contractor and former employee to continue litigation by refusing to consent to settlement. This court concurs with and adopts the *Killingsworth* holding: "[T]he government's consent to dismissal is only required during the initial sixty-day (or extended) period in which the Government may decide whether to intervene." 25 F.3d at 722. *See also, U.S. ex rel. Haskins v. Omega Institute, Inc.,* 11 F.Supp.2d 555, 561–62 (D.N.J.1998) ("Where the government declines to so intervene, it cannot compromise plaintiff's claim, even if it settles its own claim against a defendant.")

Out of an abundance of caution, and respect for the Justice Department's preferences and procedures, the Relator has sought and obtained consent of the Justice Department in this case. DOJ consented on August 13, 2012, to the adequacy of the $1.6 million payment to the United States and agreed upon a relator's share of 25% of that amount. Ex. D-1. The Government also lodged no objection to the $300,000 in statutory attorney's fees negotiated by Relator's counsel pursuant to the authority of 31 U.S.C. 3730(d)(1). However, in granting its consent to the settlement, DOJ also indicated a desire to review the language of the formal settlement agreement to be executed by the parties and provided Relator's counsel a sample Settlement

---

[3]   *See also U.S. ex rel Jones v Westwind*, 417 F.Supp.2d 1246, 1248 (N.D. Ala 2006) ("This statutory provision [31 U.S.C. § 3730(b)(1)] necessarily refers to, and is limited to, the time period during which the United States can intervene and while the complaint is under seal.").

Agreement approved by DOJ in an unrelated case. Ex. D-1, D-2. Relator's counsel used this document as a form to draft a formal Settlement Agreement for execution by the parties and transmitted that document to MCCI's counsel for review and approval on August 23, 2012. Ex. E-1, E-2.

On September 13, 2012, MCCI's counsel returned a redlined version of this document in which it agreed to a dismissal without prejudice to the United States, but deleted several clauses of the government's form designed to limit the scope of any release to be granted by the government (by specifying that there would be no release of tax, administrative or criminal liabilities to the United States) and to preclude the defendant from claiming amounts paid to the United States as a reimbursable cost in other Government billings (a highly unlikely scenario applicable primarily to defense contractors with cost-reimbursement contracts and hospitals filing Medicare Part A cost reports). Ex. H-1, Ex. H-2.  All of these deletions by MCCI are non-material and irrelevant under the facts of the instant case because the United States is granting no release whatsoever to MCCI and because MCCI, as a primary-care clinic receiving Part C capitation payments from Humana, does not bill the Government or file Part A cost reports.[4]

Nevertheless, Relator's counsel was attempting to obtain a consensus between MCCI and the Government with respect to the language of the formal Settlement Agreement when this honorable Court issued its order granting the motions to dismiss filed by the other defendants. ECF 129. After the Court issued its Order on Defendants' Motions to Dismiss, MCCI's counsel immediately sent a letter to Relator's counsel expressing "shock" that counsel would represent to the Court that the settlement was about to be concluded and stated "[i]t is evident that we cannot

---

[4]      In this regard, the Court should note that MCCI argued in its Motion to Dismiss that it has no contractual relationship with the Government and does not accept any federal money; it is paid only by Humana.  MCCI Motion to Dismiss, ECF 67, pp.7-8.

agree on the proper language for a final settlement stipulation and all prior offers are withdrawn." Ex. I.

As noted above, a party may not withdraw from a binding settlement when presented with a formal settlement agreement simply because it does not like some of the language of the tendered document and other developments have caused it to suffer buyer's remorse. The disagreement between the United States and MCCI over the language of the formal Settlement Agreement is a disagreement over non-material and non-essential details. The Relator, not the Government, is the party to the settlement with MCCI and does not have an interest in whether any of the government's preferred clauses are included or not. All of the essential terms of the Relator's settlement with MCCI are set out in the Memo of Understanding and have been approved by the Government.

The real reason that MCCI is balking about executing a formal settlement agreement of course is because it now thinks it has made a bad deal. Relator respectfully submits that it is entitled to hold MCCI to its settlement of disputed claims that could easily have gone a different way and might yet on appeal to the Eleventh Circuit. The Court should not permit the Government's concern about boilerplate clauses of its form of Settlement Agreement to interfere with enforcement of a settlement it has approved as to all material terms, especially since it is not at all clear that the Government's consent to the settlement is required in a non-intervened case where the Government is granting no release.

### Policy Considerations Favor Enforcement of Mediated FCA Settlements.

Settlement agreements are highly favored, and will be enforced whenever possible. *See Robbie,* 469 So.2d at 1385; *Murchison v. Grand Cypress Hotel Corp.,* 13 F.3d 1483, 1486 (11th Cir.1994) ("We favor and encourage settlements in order to conserve judicial resources.").

It is especially desirable that the essential terms of mediated settlements be enforced in declined *qui tam* cases because, as a practical matter, Relators always seek Justice Department approval, whether they are legally required to do so or not. Without the willingness of courts to enforce the essential terms of settlement, despite disagreements over non-essential details, the long delays involved in obtaining Government approval offer an opportunistic party an opportunity to hedge its bets.

The Government does not participate in mediation of declined cases. *See United States' Statement of Interest*, *United States ex rel McDonough v GPSI*, Ex. L (government objection to participating in mediation due to lengthy, complex approval process). Consequently, unlike other mediations, FCA settlements in declined cases normally are not finalized for many months due to the Government's lengthy and complex approval process.

MCCI's tactic, if successful, creates a roadmap for undermining <u>all</u> attempts at early resolution of multiple-defendant FCA cases. *Why would any party ever finalize a mediated settlement agreement when a motion is still pending that may afford an opportunistic party an opportunity to renege on its deal?* Since Justice Department approval of the final details of a settlement is always slow in coming, failure to enforce the essential terms of the agreement in the instant case could have the effect of converting mediated settlements in declined multiparty FCA cases into *de facto* options to settle.

### RELIEF REQUESTED FROM THE COURT.

Relator respectfully requests that the Court enter an order enforcing the essential terms of the settlement and dismissing all claims against MCCI with prejudice as to the Relator and without prejudice as to the United States, but retaining jurisdiction to further enforce the

settlement in the event MCCI fails or refuses to pay the required $1.6 million to the United States and/or $300,000 to relator's counsel within 14 days of the dismissal order.

Relator also requests that the Court's order specifically enforce the settlement by decreeing a mutual release of all claims by and between the Relator and MCCI in lieu of the execution of the contemplated formal Settlement Agreement.

Relator also requests that the Court's order specifically approve the settlement as a fair and reasonable settlement of disputed claims, note the Government's consent to all material terms of the settlement and approve the Government's agreement to the minimum relator's share of 25% to be paid to the Relator upon the Government's receipt of the $1.6 million to be paid by MCCI.

Relator further requests that the Court decree that dismissal of this action without prejudice to the rights of the United States involves no release whatsoever granted to MCCI by the United States and that the Court's order incorporate any specific clauses desired by the United States to the effect that MCCI is not released of any tax liability, criminal charges, administrative actions or disability from charging back to the Government any of the costs of the settlement.

Alternatively, should the Court hold that these matters involving rights and liabilities between the Government and MCCI are beyond the scope of the questions fairly presented by this motion to enforce the mediated settlement agreement between the Relator and MCCI, Relator respectfully requests that the Court overrule any objection to the settlement that may be lodged by the United States on the grounds that the United States has not offered "good cause" for objection to the settlement because the clauses desired by the United States are not essential or material terms of the approved settlement between the Relator and MCCI.

Finally, Relator requests an award of attorney's fees necessarily incurred by Relator's counsel to finalize the settlement. 31 U.S.C. 3730(d)(2) states that "[i]f the Government does not proceed with an action under this section, the person bringing the action or **settling the claim** shall receive an amount which the court decides is reasonable for collecting the civil penalty and damages. . . . Such person shall also receive an amount for reasonable expenses which the court finds to have been necessarily incurred, plus reasonable attorneys' fees and costs. **All such expenses, fees, and costs shall be awarded against the defendant**." (emphasis added.)  Relator has necessarily incurred attorneys' fees over and above those contemplated by the settlement agreement in order to finally settle the claim. As a matter of law, these fees must be awarded against the Defendant MCCI.

### CONCLUSION

Defendant MCCI here attempts to renege on a mediated settlement agreement. The parties spent a full day with a seasoned mediator, a former DOJ trial attorney intimately familiar with the False Claims Act, reaching the terms of their settlement. If the Court permits MCCI to back out over non-material terms of the formal Settlement Agreement that MCCI balked at signing, the Court's decision will have a deleterious effect upon settlement of all non-intervened qui tam actions.

The United States normally does not participate in settlement negotiations in non-intervened cases; therefore, Relator and defendant are left guessing what specific language the Government may request when it finally raises its head. In this case, the Government has requested the use of boilerplate clauses that have no relevance to the settlement because the Government is granting no release to MCCI, which has used those clauses as an excuse to balk at a settlement it now considers a bad deal. The Court should cut through this irrelevant dispute

over matters of form and enforce the settlement agreement, all essential terms of which were agreed upon by the parties, reduced to writing, announced to the Court and approved by the Department of Justice.

By:  /s/ *Jonathan Kroner*
FBN: 328677
420 Lincoln Road, Suite 248
Miami Beach, Florida 33139-3031
(305) 310-6046

Wm. Paul Lawrence, II*
WATERS & KRAUS, LLP
Virginia Bar No. 82950
Washington, D.C. Metro Office
37163 Mountville Road
Middleburg, VA 20117
(540)-687-6999

Charles Siegel*
Loren Jacobson*
WATERS & KRAUS,LLP
3219 McKinney Ave.
Dallas, TX 75204
(214)-357-6244

Jennifer L. McIntosh *
WATERS KRAUS & PAUL
711 Van Ness Avenue, Suite 220
 San Francisco, CA 94102
(415)-296-6060

**LOCAL RULE 7.1.A.3 CERTIFICATION**

In accordance with Local Rule 7.1.A.3, the undersigned certify that counsel for the Relator/Marc Osheroff conferred with counsel for Defendant MCCI in an attempt to resolve this matter but was unable to do so.

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true copy hereof was furnished via electronic transmission this 26th of September 2012 to: **June C. Acton** United States Attorney's Office 99 NE 4th Street, Miami, FL 33132 june.acton@usdoj.gov; **Renée Balancier**, United States Department of Justice Civil Division PO Box 261, Ben Franklin Station Washington, DC 20004 Renee.Balancier@usdoj.gov; **K. Lee Blalack, II** O'Melveny & Meyers 1625 Eye Street, NW Washington, DC 20006-4001 lblalack@omm.com; **Joyce R. Branda** United States Department of Justice Commercial Litigation Branch 601 D Street NW Washington, DC 20004; **Jose Alfredo De Armas** Armas & Borron LLP 4960 SW 72 Avenue, Suite 206 Miami, FL 33155 alfred@aablawfirm.com; **Michael Granston** United States Department of Justice Commercial Litigation Branch PO Box 261, Ben Franklin Station Washington,  DC 20004; **John Clifford Hanson, II** The Barthet Firm 200 S. Biscayne Blvd. Suite 1800 Miami, FL 33131 jhanson@barthet.com; **Andrew Russell Kruppa** Squire, Sanders & Dempsey (US) LLP 200 S. Biscayne Blvd., Suite 4100 Miami, FL 33131 andrew.kruppa@ssd.com; **David J. Leviss** O'Melveny & Meyers, LLP 1625 Eye Street, NW Washington, DC 20006 dleviss@omm.com; **Daniel Christopher Mazanec** Squire, Sanders & Dempsey (US) LLP 200 S. Biscayne Blvd., Suite 4100 Miami, FL 33131 daniel.mazanec@ssd.com; **Alexandra M. Plasencia** MCCI Group Holdings, LLC Corporate Counsel 4960 SW 72 Avenue, Suite 406 Miami, FL 33155 APlasencia@mccigroup.com; **Sandra Sepulveda** O'Melveny & Meyers LLP  400 South Hope Street Los Angele, CA 90071 ssepulveda@omm.com; **Gary Paul Timin** Squire Sanders & Dempsey (US) LLP 200 S. Biscayne Blvd., Suite 4100 Miami, FL 33131-2398 gary.timin@ssd.com; **and Katherine Lynn Wawryzniak** O'Melveny & Meyers, LLP 1625 Eye Street, NW Washington, DC 20006 kwawryzniak@omm.com.

By:   _/s/ Jonathan E. Kroner_
FBN: 328677
420 Lincoln Road, Suite 248
Miami Beach, Florida 33139-3031
(305) 310-6046