**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.: 10-24486-cv-SCOLA**

UNITED STATES OF AMERICA
*ex rel.* MARC OSHEROFF, *et al.*,

    Plaintiff-Relator,

v.

HUMANA, INC., *et al.*,

    Defendants.

_____/

## ORDER ON RELATOR'S MOTION FOR RECONSIDERATION

THIS MATTER is before the Court on Plaintiff-Relator's Motion for Reconsideration of the Court's Order on Certain Defendants' Motions to Dismiss, filed on October 25, 2012 [ECF No. 137] (the "Order"). The Court has carefully reviewed the applicable law and the parties' submissions. For the reasons that follow, the Motion for Reconsideration is denied.

### I.  BACKGROUND

On September 28, 2012, following extensive briefing and oral argument, the Court granted Humana, Inc.'s motion to dismiss, finding Relator's claims barred by the "public disclosure bar" of the False Claims Act ("FCA") [ECF No. 129]. *See* 31 U.S.C. § 3730(e). Humana's motion was joined by several of its affiliated companies, also defendants (collectively the "Humana Defendants"), and by Pasteur Medical Centers, Inc. ("Pasteur"). For the reasons described in the Order, the Amended Complaint was dismissed with prejudice as to the Humana Defendants and Pasteur, but not as to defendant MCCI Group Holding, LLC ("MCCI").[1] Dissatisfied with the Court's ruling, Relator now seeks reconsideration of the Order, arguing that it was "manifest error" to find that Relator's claims were substantially similar to (and based upon) allegations and transactions that had already been publicly disclosed.

---

[1] MCCI filed a similar motion to dismiss [ECF No. 67], but later advised the Court that the claims against it had been settled, subject to approval from the United States Attorney General. Accordingly, the Court denied MCCI's motion, but indicated that it would entertain a new motion should settlement fail. The enforceability of the parties' agreement is presently the subject of a Motion to Enforce [ECF No. 130], which remains under consideration.

## II. LEGAL STANDARD

The decision to grant or deny a motion for reconsideration is committed to the district court's sound discretion. *See Chapman v. AI Transport*, 229 F.3d 1012, 1023-24 (11th Cir. 2000) (reviewing reconsideration decision for abuse of discretion). Reconsideration is appropriate only in very limited circumstances, such as where "the Court has patently misunderstood a party, where there is an intervening change in controlling law or the facts of a case, or where there is manifest injustice." *Vila v. Padron*, No. 04-20520-CIV, 2005 WL 6104075, at *1 (S.D. Fla. Mar. 31, 2005) (Altonaga, J.). "Such problems rarely arise and the motion to reconsider should be equally rare." *Id.* (citations omitted). In order to obtain reconsideration, "the party must do more than simply restate its previous arguments, and any arguments the party failed to raise in the earlier motion will be deemed waived." *Id*. "[A] motion for reconsideration should not be used as a vehicle to present authorities available at the time of the first decision or to reiterate arguments previously made." *Z.K. Marine Inc. v. M/V Archigetis*, 808 F. Supp. 1561, 1563 (S.D. Fla. 1992) (Hoeveler, J.).

## III. ANALYSIS

Relator asks the Court to reconsider its holding that his claims against the Humana Defendants and Pasteur were precluded by the public disclosure bar, arguing that the bar does not apply where the disclosures at issue do not allege that the defendants "actually engaged in wrongdoing." The disclosures at issue in this case, Relator maintains, revealed only that the Humana Defendants and Pasteur offered gifts of "nominal" value to potential Medicare enrollees—*i.e.*, conduct that, on its face, would appear to be protected under one of several statutory "safe harbors." Relator complains that, in dismissing his claims under these circumstances, the Court's decision effectively "shields *all* Medicare providers from allegations of kickbacks by public disclosure of *any* remuneration." [ECF No. 158 at 2] (emphasis in original). The Court disagrees. Upon re-reviewing Relator's arguments—arguments that have already been raised and thoroughly considered—the Court once again finds Relator's position unavailing.

At bottom, Relator's principal contention is that the Court erred in its interpretation of *Cooper v. Blue Cross and Blue Shield of Florida Inc.*, 19 F.3d 562, 567 (11th Cir. 1994), a *qui tam* action wherein the Eleventh Circuit found that certain disclosures regarding the defendant's Medicare practices were insufficient to trigger the public disclosure bar. The relevant section of the Eleventh Circuit's opinion provides as follows:

> The first disclosure is a 1987 GAO report on intermediaries and [Medicare secondary payer ("MSP")] laws. This report does name BCBSF, but only in the context of its role as an intermediary responsible for monitoring payment to hospitals under the MSP laws. The report criticizes BCBSF's plan for monitoring payments to hospitals under the MSP laws and notes a potential conflict of interest when BCBSF is also a primary insurer for the working aged. *But the report does not allege that BCBSF in its capacity as a primary insurer actually engaged in wrongdoing*. This report does not constitute a "public disclosure of allegations or transactions" that BCBSF knowingly violated MSP laws.
>
> BCBSF was also mentioned (as a primary insurer) in a House subcommittee hearing on industry-wide MSP fraud. Cooper's counsel was present at the hearing which took place in July 1990, five weeks before Cooper's action was filed. This hearing was a public disclosure of allegations. So, we must consider whether Cooper's suit was based on the information disclosed. We conclude that it was.

*Id*. (emphasis added, footnote omitted). Quoting only isolated language from the Eleventh Circuit's opinion, Relator cites *Cooper* for the general proposition that the public disclosure bar applies *only* where the disclosures allege that the *qui tam* defendant "actually engaged in wrongdoing." Thus, Relator reasons, because it was not apparent from the face of the disclosures that Defendants' conduct was *in fact* illegal—that is, within the reach of the Anti-Kickback Statute ("AKS") and the Civil Monetary Penalties Law ("CMPL") *and* not protected by an applicable safe harbor—the public disclosure bar does not apply.

*Cooper* must not be read in a vacuum. As explained in the Order, "the Eleventh Circuit [in *Cooper*] did not hold that the public disclosure bar requires, *in every case*, specific allegations of wrongdoing." Order at 12 [ECF No. 129] (emphasis in original). It "merely held that one of the many disclosures relied upon by the defendant, a Government Accountability Office report, did not allege that the defendant actually engaged in wrongdoing '*in its capacity as a primary insurer*' (the capacity in which it was acting when it allegedly defrauded the government)." [*Id*.] (emphasis in original). Thus, under *Cooper*, the public disclosure only applies where the conduct described in the public disclosure is substantially similar to the conduct giving rise to the relator's complaint. [*Id*.] Relator's Motion for Reconsideration does not touch upon this crucial aspect of the Court's opinion. Nor does Relator show how the Court "patently misunderstood" his position.

Instead, Relator's motion merely supplies hyperbolic illustrations of how the Court's decision, in his view, could lead to unintended consequences. For example, Relator argues that, under the Court's ruling, "a Medicare Advantage provider paying $1,000 to every enrollee in its plan . . . could immunize itself from qui tam prosecution by publicly advertising that it provides free coffee and pastries to beneficiaries." [ECF No. 137 at 2]. *See also* [ECF No.158 at 2] (making the same argument, but with "$1,000 in pre-paid Starbucks cards"). This is not so. Allegations that a Medicare provider paid $1,000 to prospective enrollees are not "substantially similar" to allegations that the provider gave prospective enrollees free coffee and pastries. Further, the public disclosure bar does not "immunize" defendants from prosecution. It merely provides that certain actions involving fraud upon the Government—namely, those cases in which the aid of private parties was not needed to identify and eliminate the fraud—may only be maintained by the Government itself, and not by *qui tam* plaintiffs.

In any event, even if *Cooper* limited the application of the public disclosure bar to instances where the disclosure involved allegations that the defendant "actually engaged in wrongdoing," the disclosures here meet that standard. As noted in the Order, "since the AKS and CMPL are implicated upon the mere *offering* of *any* remuneration, it follows that the public disclosures cited by Defendants—which reveal that Defendants offer existing and prospective Medicare recipients *free unlimited* transportation, *free* food, and *free* salon services—were sufficient to bring the Defendants' fraud to the Government's attention."[2] [*Id*. at 12-13]. For the bar to apply, it is not necessary, as Relator contends, that the disclosed information definitively establish that Defendants in fact "committed fraud" or that there was an "illegal purpose" to Defendants' activities. [ECF No. 137 at 3–4]. To so hold would establish an impossibly high threshold for application of the public disclosure bar—a threshold that would undermine Congress's expressed concern of preventing "parasitic" lawsuits. *See Cooper*, 19 F.3d at 565 (citing *False Claims Act Implementation: Hearing Before the Subcomm. on Admin. Law and Gov. Relations of the House Comm. on the Judiciary*, 101st Cong., 2d Sess. 3 (1990)).[3]

---

[2] This is not to say, of course, that the offering of free unlimited transportation, free food, and free salon services is, in and of itself, a violation of the AKS and the CMPL. The Court chose its words carefully. This conduct "implicate[s]" the prohibitions of the AKS and CMPL—*i.e*., it *may* be found unlawful if the Defendant possessed the requisite intent and does not otherwise have a meritorious defense under the safe harbor provisions. Order at 12 [ECF No. 129]. In this way, Relator's reliance on *United States ex rel Armfield v. Gills*, 8:07-cv-2374, slip op. (M.D. Fla. Oct. 17, 2012), is misplaced.

[3] The Court recognizes, as pointed out by Relator, that materiality is an element of an FCA claim. As the statute makes clear, however, the FCA's materiality requirement pertains only to the tendency of the defendant's statements

### IV. CONCLUSION

The history of the FCA and *Cooper* establish that district courts do not have jurisdiction to entertain *qui tam* suits where the relator's complaint is based upon or substantially similar to information that, because of the manner in which it was disseminated, could have brought the defendant's alleged wrongdoing to the Government's attention. *See* Order at 10–14 [ECF No. 129]. Whether a defendant may ultimately prevail on the basis that his or her conduct was protected by a statutory safe harbor—a question to be resolved in the merits—has no bearing on the Court's public disclosure bar analysis.[4]

In sum, "[i]t is an improper use of the motion to reconsider to ask the Court to rethink what the Court . . . already thought through—rightly or wrongly[.]" *Z.K. Marine, Inc.*, 808 F. Supp. at 1563 (citations and bracketing omitted). As Relator's motion seeks only a second bite at the apple, the Court finds no cause to revisit its prior decision.

Accordingly, for the reasons set forth above, it is hereby **ORDERED and ADJUDGED** that Relator's Motion for Reconsideration of this Court's Order on Certain Defendants' Motions to Dismiss [ECF No. 137] is **DENIED**.

**DONE** and **ORDERED** in chambers at Miami, Florida on January 31, 2013.

_____
ROBERT N. SCOLA, JR.
UNITED STATES DISTRICT JUDGE

*Copies to:*
Counsel of Record

---

to influence the Government's decision to pay or approve the defendant's allegedly false claim. *See* 31 U.S.C. § 3729(b)(4). No party disputes that the Defendants' representations that they were in compliance with federal law was material to the Government's payment decisions in this case.

[4] The Court agrees with Relator that a defendant who publicly disseminates false information to "throw[] the government off of the trail of the fraud" might not be able to rely on the public disclosure bar as a defense. But that would be because the occurrence of actual fraud would, as a result of the defendant's actions, be less likely to be uncovered by the Government through publicly available information. Here, the disclosures reveal the very conduct that Relator alleges is illegal—namely, that Defendants sought to attract new enrollees, in part, by offering them free transportation, free meals, and free salon services. That the disclosures did not divulge as much detail as alleged by Relator in his Amended Complaint (*e.g.*, that Defendants allegedly provided their patients with transportation to such locations as Wal-Mart and casinos) does not mean that the information that was divulged was "innocuous."